IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

OETTINGER V. HIATT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARK OETTINGER AND MENDY OETTINGER, HUSBAND AND WIFE, APPELLEES,
V.
IRVING P. HIATT AND VIVIAN M. HIATT, HUSBAND AND WIFE, APPELLANTS.

Filed May 7, 2013.    No. A-12-468.

Appeal from the District Court for Lincoln County, RICHARD A. BIRCH, Judge, on appeal thereto from the County Court for Lincoln County, MICHAEL E. PICCOLO, Judge. Judgment of District Court affirmed.

Terrance O. Waite and Patrick M. Heng, of Waite, McWha & Heng, for appellants.

David W. Pederson, of Pederson Law Office, for appellees.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

This appeal raises the question of whether a homeowner may prove breach of implied warranty of workmanlike performance by proving a construction defect that allowed water to enter the home, without definitively proving the source of that water.

The appellants, Irving P. Hiatt and Vivian M. Hiatt, argue that the appellees, Mark Oettinger and Mendy Oettinger, did not prove breach of implied warranty because they failed to establish the source of the water damaging their basement and therefore failed to establish that the Hiatts' defective construction caused the water damage. Specifically, the Hiatts argue that the Oettingers' landscaping caused excessive water to enter the basement which caused the water damage. The Hiatts' claim lacks merit, and accordingly, we affirm the judgment of the Lincoln County District Court, affirming the judgment of the Lincoln County Court, in favor of the Oettingers.

- 1 -

BACKGROUND

The Hiatts constructed a house in North Platte, Nebraska, in 2004. They sold the house to the Oettingers, the first occupiers, in May 2006. A few months later, the Oettingers discovered water in their basement and contacted the Hiatts. The Hiatts replaced the "septic lift."

The Oettingers subsequently landscaped their yard. They claimed the Hiatts helped install grass and a sprinkler system. The Oettingers also added some wood chips and a strip to keep the chips in a designated area.

Water continued seeping into the Oettingers' basement in 2007 and 2008. In 2007, water saturated and molded the basement drywall. By 2009, the water was causing extensive damage to the basement each spring and fall. The Oettingers again contacted the Hiatts about the water problems and the parties worked together in an attempt to solve the problems. The parties took substantial remedial measures, including excavating the sidewalk and inspecting the downspouts, but were unsuccessful. The parties dispute whether the sand and backfill around the house were wet when they excavated. During this time, the Oettingers had to run two Shop-Vacs all night in order to remove water from the home.

The water issues increased in 2010. That year, the water damaged the walls, carpet, and flooring. The amount of water entering the basement required the Oettingers to use four Shop-Vacs 24 hours per day.

The Oettingers asked a number of individuals to inspect the basement, including Dan Messersmith, Jack Daniels, Scott Sandage, and Kevin Thrasher. Thrasher ultimately fixed the water problems.

In April 2011, the Oettingers filed a complaint in the county court for Lincoln County alleging that the Hiatts breached their contract by constructing and selling a home that was not built according to reasonable construction standards. They further alleged that the Hiatts were negligent in the repair of the home in 2009.

A bench trial was held in November 2011, at which time Mark Oettinger testified consistently with the facts as stated above.

Irving Hiatt testified that the Oettingers first contacted him with the water problems in 2006, and he confirmed that he fixed the "sewer lift." He stated that he did not know about any water problems in 2007 and 2008, but that the Oettingers did contact him about the water problems again in 2009. He admitted that he and his son, Vernon Hiatt, helped the Oettingers with some of the work they completed on the basement in 2009.

Irving Hiatt testified that they did not seal the house with "house wrap" when they built it; instead, they tarred the outside of the basement and put plastic into the tar and another layer of plastic over the top of that plastic. He did not believe that this method of sealing the basement or any aspect of the construction caused the Oettingers' water problems. Instead, he explained that water came into the basement because the Oettingers' landscaping created a dike on the sidewalk that caused water to pool and enter the home.

Vernon Hiatt testified that he and his father, Irving Hiatt, created the site where the Oettingers' house sits from the dirt mounds they dug out as part of a wetlands mitigation project. He admitted that the whole area around the house is wetlands, but explained that the house was built on a 9-foot grade and that the water table was 6 feet below the surface. He explained that

the water table would have been 14 to 16 feet below the basement. While he acknowledged that the level of the water table changes, he stated that if the water table reached the level of the Oettingers' basement, the entire valley would have noticed it. He testified that he and Irving Hiatt built the basement using the "ARXX" system and applied tar that should have acted as a sufficient basement seal.

Vernon Hiatt testified that when he went to work on the basement in 2009, he was surprised to see that the Oettingers had installed landscaping without any drainage. He stated that the Oettingers had placed "black plastic stuff" along the sidewalk and had added decorative rocks, shrubs, and wood chips. Vernon Hiatt testified that he suggested the Oettingers create drainage through the landscaping to take water away from the house. He opined that the Oettingers' decorative design area held enough water that it was running underneath the siding and across the top of the foundation wall.

Mendy Oettinger denied that the Hiatts told them that the landscaping was a problem. According to her, had the Oettingers been advised, they would have removed the landscaping.

The Oettingers retained several experts who testified either at trial or through deposition as to deficiencies in the Hiatts' construction techniques.

Messersmith testified that he has 16 to 17 years of experience in construction, including new home construction. While inspecting the Oettingers' basement, he observed water entering from between the floor and the bottom of the foundation. He testified that the builders used a slab on grade and poured the foundation on top of the floor. He explained that they should have first poured a footing and placed the foundation on top of the footing. Messersmith opined that this would have allowed water to seep "underneath the floor instead of ruining everything on the inside of the home." Messersmith also testified that he did not see any evidence of tar or foundation wrapping on the house and that he did not believe tar could have been applied because it would have melted the Styrofoam that was used in construction. He also opined that nothing related to the landscaping or outside of the home caused the water problems.

Sandage, the electrical superintendent for North Platte, testified that he also inspected the Oettingers' basement and brought them Shop-Vacs to help remove the water. He stated that the "cold joint" between the wall and the floor was not finished, but instead jagged. He observed pockets of air along the floor where it appeared the concrete had not reached the bottom of the floor.

Daniels testified in his deposition that he teaches construction at Mid Plains Community College in North Platte. Like Sandage and Messersmith, Daniels stated that he observed water seeping into the Oettingers' basement from the "cold joint," between the basement wall and the slab. Daniels testified that the builders should have poured footings that extended below the surface before laying a slab. He explained that in the "ARXX" system used by the Hiatts, the slab goes on top of the footing and the wall should go next to the slab rather than on top of it to avoid water problems. Daniels explained that any time water can penetrate the outside wall, it creates a potential water problem. He stated that if water penetrates the outside wall, it is better if it is underneath the slab, rather than on top of the slab.

Daniels testified that the water table varies at different times of the year and fluctuates based on irrigation and changes in the river. He said that the Oettingers' water problems were not

caused by any type of "water trap," such as landscaping. Instead, he stated that the water was either traveling down due to the rain or coming up into the basement from below.

Thrasher also testified that he noticed the basement wall was built on top of the floor slab. He said that landscaping could theoretically cause water to pool, but that the Oettingers' landscaping was done well and was not causing the water problems.

In December 2011, the Lincoln County Court found that the Hiatts breached an implied warranty because the home they sold the Oettingers was not reasonably fit for its intended use. The court detailed the Oettingers' water problems and acknowledged the Hiatts' claim that the Oettingers' landscaping caused the water problems. The court explicitly stated that the Oettingers' evidence negated the Hiatts' theory. The court noted it relied on Daniels' deposition and opinion that the Hiatts' construction method caused water to enter the basement from the "cold joint." The court also found that Messersmith's testimony and observation that water entered the house between the floor and the wall supported finding that the Hiatts' construction method caused the water problems.

The Hiatts appealed the county court judgment to the district court of Lincoln County. The district court affirmed the lower court's decision, ruling that the expert testimony supported a breach of the implied warranty of workmanlike performance.

## ASSIGNMENTS OF ERROR

The Hiatts argue, condensed and restated, that the trial court erred (1) in finding the Oettingers proved a breach of implied warranty without proving the source of the water and (2) in failing to apportion damages to the Oettingers based on their alterations to the landscaping and basement.

## ANALYSIS

### FAILURE TO APPORTION DAMAGES AND NEGLIGENCE

Before addressing the Hiatts' argument, we note that the Oettingers presented two theories of liability to the trial court. The Oettingers argued that the Hiatts were liable either on a contractual theory for breach of implied warranty of workmanlike performance or on a theory of negligence. The trial court ruled on only the contractual theory. In its brief, the Hiatts make several arguments related to the elements of negligence, but those arguments are irrelevant to the theory upon which the trial court awarded damages, and therefore, we decline to address them.

We also do not address the Hiatts' argument that the trial court failed to apportion damages to the Oettingers because they altered the basement and landscaping. In order for an appellate court to consider an error, the parties must both specifically assign and specifically argue it in their briefs. *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009). Although the Hiatts assign error to the trial court's failure to apportion damages, they do not argue this error in their brief nor do they explain how or why the trial court should have apportioned damages. Accordingly, we do not address this assigned error.

The Hiatts argue that the trial court erred in finding they breached an implied warranty of workmanlike conduct. In particular, the Hiatts state that there is no evidence in the record of the source of the water other than the Hiatts' testimony, which is that the water came from the landscaping. The Hiatts argue, therefore, that without conflicting evidence of the water's source, the trial court could not have found that the Hiatts' construction design caused the Oettingers to suffer damages. The Hiatts argue further that in finding breach of implied warranty, the trial court mischaracterized two pieces of testimony. Because the record contained sufficient evidence to support the conclusion that the Oettingers' construction design allowed natural water to infiltrate the Oettingers' basement, we affirm the decision of the trial court.

An appellate court reviews a trial court's factual findings for clear error. See *ADT Sec. Servs. v. A/C Sec. Systems*, 15 Neb. App. 666, 736 N.W.2d 737 (2007). On appeal, a county court's factual findings in a bench trial have the effect of a jury verdict and an appellate court does not reweigh the evidence, but considers the judgment in the light most favorable to the successful party. See *id*. An appellate court must resolve evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See *id*.

In Nebraska, a builder "impliedly warrants that the building will be erected in a workmanlike manner and in accordance with good usage and accepted practices in the community in which the work is done." *Henggeler v. Jindra*, 191 Neb. 317, 318-19, 214 N.W.2d 925, 926 (1974). A building must be "'reasonably fit for the intended purpose.'" *Id*. at 319, 214 N.W.2d at 926. See, also, *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). In *Henggeler*, the court noted that "[w]here a construction contract is substantially performed, the damage which the owner suffers because of defective workmanship or unsuitable materials used is measured by the reasonable cost of remedying the defects." 191 Neb. at 318, 214 N.W.2d at 927 (quoting *Jones v. Elliott*, 172 Neb. 96, 108 N.W.2d 742 (1961)).

The *Henggeler* opinion demonstrates that there are three elements required to prove breach of an implied warranty of workmanlike performance: a party must prove that an implied warranty existed, breach of that warranty, and damage caused by the breach. Notably, in *Henggeler*, the plaintiffs sought damages, arguing that the basement of a house was not constructed in a workmanlike manner and that mud and water were flowing into the basement due to the poor construction of a wall. The court did not make any explicit finding as to why the water and mud were flowing into the basement.

In this case, the Oettingers must prove that an implied warranty of workmanlike performance existed, that the Hiatts breached that implied warranty, and that the breach caused the Oettingers to suffer damages. The parties agree that there is an implied warranty of workmanlike performance in Nebraska. They also agree that no express warranty limited the implied warranty. The record is sufficient to prove that the Hiatts breached the implied warranty in the method in which they constructed the basement. It is also sufficient to support a finding that this breach was the cause of the Oettingers' damages.

Although the Oettingers did not prove the exact source of the water that entered their basement, they provided sufficient evidence that the Hiatts' faulty construction allowed water, whatever its source, to infiltrate the basement. The foreseeability of water is evidenced by the testimony of both Irving Hiatt and Vernon Hiatt who testified that during construction, they applied tar to the outside of the basement walls to act as a seal. Irving Hiatt testified that in addition to the tar, they also installed two layers of plastic. The only sufficient intervening cause that the Hiatts proposed was the Oettingers' landscaping, which the trial court rejected. Thrasher and Daniels both opined that the landscaping was not a factor in causing the water problems.

The Hiatts argue that the Oettingers did not explain where the water came from and therefore could not prove that the Hiatts' construction method caused the damage. The record, however, does not support this argument. Vernon Hiatt testified that the Hiatts built the home in a wetland area and that the water table was 14 to 16 feet below the basement. Thrasher testified that the water table changes seasonally, based on the river and irrigation. Thrasher also opined that water entered the basement after rain or that ground water came up into the basement. Oettingers' testimony that the sand and backfill around the house were wet supports Thrasher's opinion. Messersmith, Daniels, Sandage, and Thrasher all testified that the construction defect caused water to enter the basement. The above testimony supports the trial court's finding that the Hiatts' faulty construction method caused the Oettingers to suffer damages.

Finally, the Hiatts argue that the Oettingers' attempts to seal the basement with wrap after the water infiltrated made the problems worse and voided any warranty that otherwise existed. The Oettingers testified, however, that the Hiatts helped them with their attempts to correct the water problems, including tearing out the sidewalk, excavation, and wrapping the house. These attempts, therefore, did not void the implied warranty. Furthermore, the record reflects that the Oettingers experienced water problems soon after they moved in and continued to experience them despite the attempted repairs. The evidence in the record is sufficient to conclude that the water came from natural sources and that it entered the basement because of the Hiatts' faulty construction. The evidence in the record supports the trial court's factual finding that the Hiatts breached an implied warranty of workmanlike performance in the method used to construct the basement, causing the Oettingers to suffer damages. Accordingly, we affirm the judgment of the Lincoln County District Court, affirming the judgment of the Lincoln County Court, in favor of the Oettingers.

CONCLUSION

Because the evidence in the record supports the trial court's factual finding that the Hiatts' flawed construction caused water damage to the Oettingers' basement, neither the trial court nor the district court erred in holding the Hiatts liable for breach of implied warranty.

AFFIRMED.